IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-648-KS

EDWARD DAVIS, )
                    )
    Plaintiff, )
                    )
    v. )
                    )      **ORDER**

FRANK BISIGNANO, Commissioner )
of Social Security Administration,[1] )
                    )
    Defendant. )

This matter is before the court for judicial review pursuant to 42 U.S.C. § 405(g) of a final administrative decision of the Social Security Administration, the parties having consented to proceed pursuant to 28 U.S.C. § 636(c). Edward Davis ("Plaintiff") filed this action seeking judicial review of the denial of his application for a period of disability and disability insurance benefits ("DIB"). The parties have fully briefed the matter pursuant to the Supplemental Rules for Social Security Actions. Having carefully reviewed the administrative record and the briefs submitted by the parties, the court remands the case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## STATEMENT OF THE CASE

Plaintiff applied for DIB on February 16, 2023, with an alleged onset date of November 22, 2022. (R. 23, 220–26.) The application was denied initially and upon

---

[1] Frank Bisignano is now the Commissioner of Social Security and therefore is substituted as a defendant to this action. *See* Fed. R. Civ. P. 25(d).

reconsideration, and a request for hearing was filed. (R. 23, 73, 84, 111–12.) A telephonic hearing was held on July 29, 2024, before Administrative Law Judge ("ALJ") Anne-Marie Ofori-Acquaah, who issued an unfavorable ruling on August 15, 2024. (R. 23–72.) On September 23, 2024, the Appeals Council denied Plaintiff's request for review. (R. 7–12.) At that time, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. On November 15, 2024, Plaintiff filed the instant civil action, seeking judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and

2

second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II.    Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4); *Albright v. Comm'r of SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's residual functional capacity] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). "If the Commissioner meets [this] burden, the ALJ finds the claimant not disabled and

3

denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015).

### III.   ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act ("the Act"). As a preliminary matter, the ALJ found Plaintiff meets the insured status requirements of the Act through December 31, 2028. (R. 25.) At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since November 22, 2022, the alleged onset date. (*Id.*) Next, the ALJ determined Plaintiff has severe impairments of obesity, degenerative disc disease, depression, and anxiety disorder. (*Id.*) The ALJ further found Plaintiff has non-severe mental impairments of migraine headaches and bilateral osteoarthritis of the knees. (R. 25–26.) The ALJ further found that Plaintiff's diagnosis of post-traumatic stress disorder ("PTSD") was not "a medically determinable impairment of PTSD." (R. 26.)

At step three, the ALJ concluded Plaintiff's impairments are not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (R. 26.) The ALJ expressly considered Listings 1.15, 1.18, 12.04, and 12.06 (R. 27–30.)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff has

> the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except that he can frequently climb ramps, stairs, ladders, ropes and scaffolds; frequently stoop, kneel, crouch, and crawl; he can perform simple, routine, and repetitive tasks; he can maintain attention and concentration sufficient enough to perform such tasks

4

over a 2-hr period in an 8-hr work day; he can make simple work related decisions; and he can have occasional interactions with supervisors, coworkers and the public[.]

(R. 30.) In making this assessment, the ALJ stated that she considered Plaintiff's symptoms and the evidence (both "objective medical" and "other") based on the requirements of 20 C.F.R. § 404.1529 and SSR 16–3p, 2017 WL 5180304 (Oct. 25, 2017), and found Plaintiff's statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms "not entirely consistent with the medical evidence and other evidence in the record." (R. 30–31.) At step four, the ALJ concluded that Plaintiff is unable to perform any past relevant work. (R. 35.) At step five, the ALJ determined, based upon Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, namely: machine feeder (DOT #699.686-010), industrial sweeper (DOT #389.683-010), and produce packer (DOT #920.687-134). (R. 36.) The ALJ concluded that Plaintiff has not been disabled under the Act since November 22, 2022, through the date of the decision. (*Id.*)

## IV. Plaintiff's Arguments

Plaintiff contends the Commissioner erred by

(A) improperly relying on state agency consultant medical opinions and mischaracterizing medical evidence when assessing the RFC (Pl.'s Br. [DE #8] at 9–11);

(B) failing to evaluate whether Plaintiff's type 2 diabetes was a severe impairment at step two of the sequential evaluation process or to consider the functional impact of Plaintiff's diabetes when assessing the RFC (*id.* at 13–15);

(C) improperly evaluating Plaintiff's statements about his symptoms when assessing the RFC (*id.* at 17–19); and

5

(D) finding Plaintiff's migraine headaches are non-severe and result in no work limitations (*id.* at 20–23).

For the reasons explained below, the court agrees with Plaintiff as to arguments (C) and (D), and therefore orders remand to the Commissioner for further proceedings.

A "severe" impairment within the meaning of the regulations is one that "significantly limits . . . [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Conversely, an impairment is not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." SSR 85–28, 1985 WL 56856, at *3 (Nov. 15, 1985); *see also Evans v. Heckler,* 734 F.2d 1012, 1014 (4th Cir. 1984).

At step two of the sequential evaluation process, the ALJ must determine whether a claimant's impairment(s), individually or in combination, are "severe." 20 C.F.R. § 404.1523. So long as a claimant has any severe impairment or combination of impairments, the ALJ must proceed beyond step two and consider all of the impairments (including non-severe impairments) at the remaining steps of the sequential evaluation process. *Id.*; *see also* SSR 96–8p, 1996 WL 374184, at *5 (July 2, 1996) (explaining that the existence of one or more severe impairments requires the ALJ to "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'").

6

Courts have found that an ALJ's failure to find a particular impairment severe at step two does not constitute reversible error where the ALJ determines that a claimant has other severe impairments and proceeds to evaluate all the impairments at the succeeding steps in the evaluation. *See Jones v. Astrue*, No. 5:07-CV-452-FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (agreeing with various circuit and district courts that "it is not reversible error where an ALJ does not consider whether an impairment is severe at step two of the sequential evaluation *provided the ALJ considers that impairment in subsequent steps*" (emphasis added)) (citing, *inter alia*, *Hill v. Astrue*, 289 F. App'x 289, 292 (10th Cir. 2008), and *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *McClain v. Colvin*, No. 1:12-CV-1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014).

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96–8p, 1996 WL 374184, at *1; *see also* 20 C.F.R. § 404.1545(a)(1). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96–8p, 1996 WL 374184, at *1. In assessing an individual's RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 404.1545(a)(4). The RFC assessment must be based upon all relevant evidence, which may include the claimant's own description of limitations from alleged symptoms. SSR 96–8p, 1996 WL 374184, at *5; 20 C.F.R. § 404.1545(a)(3). In fulfilling the obligation to consider all relevant evidence, an ALJ

7

"cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017). Rather, the ALJ must "explain how any material inconsistences or ambiguities in the evidence were considered and resolved." SSR 96–8p, 1996 WL 374184, at *7.

An ALJ must also "include a narrative discussion describing how the evidence supports each conclusion" in the RFC. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636). The ALJ must specifically explain how certain pieces of evidence support particular conclusions and "discuss[ ] . . . which evidence the ALJ found credible and why." *Monroe*, 826 F.3d at 189 (quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The Fourth Circuit has interpreted this to require an ALJ to "build an accurate and logical bridge from the evidence to [her] conclusion." *Monroe*, 826 F.3d at 189 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see also Arakas v. Comm'r of SSA*, 983 F.3d 83, 95 (4th Cir. 2020). ALJs must explain their RFC findings regarding contested functional abilities when conducting the required function-by-function analysis. *See Dowling v. Comm'r of SSA*, 986 F.3d 377, 388–89 (4th Cir. 2021).

### A.     Non-Severe Impairments and RFC

At step two, ALJ Ofori-Acquaah explained that she determined Plaintiff's migraines were non-severe because (i) Plaintiff's testimony about his migraine symptoms was unchanged from when Plaintiff was working, (ii) Plaintiff currently takes over-the-counter medication for migraines because the prescription medication

8

Plaintiff had previously taken caused negative side-effects, and (iii) there is no evidence that the migraines have "lasting sequelae or any significant work-related limitations." (R. 26.) Later in the decision, the ALJ accurately summarized Plaintiff's testimony about his migraines (R. 31; *see also* R. 53–54, 63–64 (Plaintiff's hearing testimony about migraines)) and stated she was rejecting a state agency doctor's medical opinion that Plaintiff needed a migraine-related noise limitation (R. 33),[2] but the ALJ said nothing about how she evaluated the functional impact of Plaintiff's migraines. The ALJ also did not explain why she implicitly rejected Plaintiff's testimony about the work-related effects of his migraines. This contravenes 20 C.F.R. § 1523(c), SSR 96–8p, 1996 WL 374184, at \*5, and the ALJ's duty to explain how she reached her conclusions in the RFC. Remand is, therefore, required.[3]

### B. Symptom Evaluation

Plaintiff contends the ALJ erred in evaluating his statements about his symptoms by only considering one of the factors identified in SSR 16–3p, 2017 WL 5180304, at \*7–8, i.e. treatment records, and by failing to clearly articulate which

---

[2] In the paragraph following a summary of the regulatory standard for evaluating medical opinions contained in 20 C.F.R. § 404.1520c, the ALJ said she rejected the state agency doctor's opinion that Plaintiff required a noise limitation in the RFC because Plaintiff's migraines were non-severe. (R. 33.) That reason does not comport with 20 C.F.R. § 404.1520c and is further evidence that the ALJ's decision did not comply with the applicable legal requirements.

[3] Plaintiff makes a similar argument concerning the ALJ's evaluation of Plaintiff's type 2 diabetes. The court does not reach this issue, leaving the matter for consideration on remand.

9

statements about Plaintiff's symptoms the ALJ determined were inconsistent with other record evidence. (Pl.'s Br. at 17–19.) The court agrees.

The ALJ found that Plaintiff's statements about his symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." (R. 31.) This necessarily implies that the ALJ found at least some of Plaintiff's statements about his symptoms consistent with the record evidence. However, in the subsequent discussion of evidence relating to the symptom evaluation and RFC, the ALJ did not explain which aspects of Plaintiff's statements about his symptoms the ALJ found consistent with the record evidence and which the ALJ did not. All ALJ Ofori-Acquaah said is:

> Based on the foregoing, the undersigned finds [Plaintiff] has the above residual capacity assessment, which is supported by the longitudinal clinical record, inconsistency between the legs [*sic*] severity of impairments and functional limitation and demonstrated capabilities at physical evaluations, discrepancies in [Plaintiff]'s complaints, and the opinion evidence.

(R. 35.) This is contrary to the requirement that the ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the [ALJ] evaluated the individual's symptoms." SSR 16–3p, 2017 WL 5180304, at *10; *see also Radford*, 734 F.3d at 295 ("The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence."). Remand is, therefore, necessary.

10

### C. Evaluation of State Agency Medical Opinions

Two state agency doctors, Dr. Scott Murkin and Dr. Frank Virgili, reviewed Plaintiff's records and expressed opinions about Plaintiff's RFC at the initial and reconsideration levels. (R. 33 (citing R. 74–83 (Dr. Murkin), 85–93 (Dr. Virgili)[4].) The ALJ found both doctors' opinions that Plaintiff can perform medium work as persuasive due to "consisten[cy] with the overall record, including the unremarkable physical exams, the absence of any ongoing treatment for degenerative disc disease, as well as the mild findings on back imaging." (R. 33.) The ALJ found Dr. Virgili's RFC opinion more persuasive because Dr. Virgili opined that Plaintiff required some postural limitations, which the ALJ deemed supported by record evidence of Plaintiff's back impairment. (*Id.*)

Plaintiff argues the ALJ erred by relying on the opinions of these doctors, who did not have information regarding an x-ray of Plaintiff's thoracic spine from December 2023. (Pl.'s Br. at 10–11 (citing R. 534 (radiology note from December 12, 2023, concluding mild to moderate degenerative changes of Plaintiff's thoracic spine)).) Given the other reasons for remand explained above, and the fact that failure to consider the December 2023 radiology note will not likely occur on remand, the court declines to address this argument.

---

[4] The ALJ cites to the full explanations at the initial and reconsideration levels. The portions containing Dr. Murkin's and Dr. Virgili's RFC opinions appear at R. 79–80 (Dr. Murkin) and R. 90 (Dr. Virgili).

11

## <u>CONCLUSION</u>

For the reasons stated above, the Commissioner's decision is REVERSED and the case is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this order.

This 27th day of March 2026.

KIMBERLY A. SWANK
United States Magistrate Judge

12